In re YALE MINING CORPORATION, Debtor.

VIRGINIA NATIONAL BANK, Movant,

v.

YALE MINING CORPORATION and Cynthia D. Kinser, Trustee, Respondents.

Bankruptcy No. 7–82–01476.

United States Bankruptcy Court, W.D. Virginia, Big Stone Gap Division.

May 8, 1984.

**202**

James E. Nunley, Bristol, Va., for debtor-respondent.

Joe D. Pippin, Norton, Va., for movant.

Cynthia D. Kinser, Pennington Gap, Va., chapter 11 trustee-respondent.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This matter came on for hearing upon Motion for Relief from the stay of 11 U.S.C. § 362 filed by Virginia National Bank ("VNB"). The evidence presented at trial, however, related essentially to the question of the validity of VNB's alleged lien on a 1975 International TD Dozer. Although this issue more properly should have been brought before the Court under *Bankruptcy Rule* 7001 which requires the filing of an adversary proceeding to determine the validity, priority, or extent of liens, for purposes of expediency and judicial economy, the Court nevertheless makes the following determination with respect to the validity of VNB's lien and the stay.

Yale Mining Corporation, the Debtor herein, obtained a $25,000.00 loan from First State Bank of Wise (later merged to form VNB). The purpose of this loan was to purchase a 1975 International TD Dozer which had been repossessed by First State Bank. The debt is evidenced by a promissory note dated October 8, 1981 which grants a security interest in the dozer to the bank. Financing statements were filed by First State Bank with the Virginia State Corporation Commission and in the office of the Circuit Court Clerk of Wise County, Virginia.

The Trustee for Yale Mining Corporation contends that the bank did not perfect its lien on the dozer as it failed to comply with the requirements of *Virginia Code* § 8.9–401(1) when filing financing statements. More specifically, the Trustee argues that the bank's failure to file a financing statement in the Clerk's Office of the Circuit Court of Lee County, Virginia, the Debtor's sole place of business in the state, caused its security interest to remain unperfected.

VNB (as successor in interest to First State Bank) claims that the Debtor maintained more than one place of business in the State of Virginia at the time of the loan transaction and, therefore, all that was necessary to perfect its security interest in the dozer was the filing of a financing statement solely with the State Corporation Commission.

██ Perfection of a security interest under the Virginia Commercial Code turns on whether a financing statement, if required, has been filed. *Va. Code* §§ 8.9–302, 8.9–303. A trustee in bankruptcy takes priority in rights to collateral over a secured party with an unperfected security interest at the date of the filing of the bankruptcy petition. *Va. Code* § 8.9–301(1)(b) and (3); *In re Hurt Enterprises, Inc.,* 321 F.Supp. 1307 (W.D.Va.1971). To be effectively filed, a financing statement must be filed in the proper place, specified in *Va. Code* § 8.9–401, which provides in part:

(1) The proper place to file in order to perfect a security interest is as follows:

. . . . .

(c) in all other places, in the office of the State Corporation Commission and *in addition, if the debtor has a place of business in only one county or city of this State, also in the office of the clerk of the court in which deeds are admitted to record of such county or city,* ... (emphasis added)

██ Contrary to VNB's contention at trial, the bank is not entitled to the benefit of the "good faith" savings clause in *Va. Code* § 8.9–401(2) in the case of erroneous filing. The trustee in bankruptcy has rights of a judgment lien creditor without knowledge of the debtor or any creditor. 11 U.S.C. § 544(a); *In re Hurt Enterprises, Inc., supra* at 1309; *In re Dunn Brothers, Inc.,*

16 B.R. 42, 32 UCC Rep. 1195 (Bkrtcy.W.D. Va.1981).

The sole issue for this Court's determination is whether the Debtor has more than one place of business within the meaning of *Va. Code* § 8.9–401(1)(c) in October of 1981, the time of the loan transaction between the parties.

The evidence in the instant case consists mainly of witness testimony. The president of Yale Mining during the period in question testified that the Debtor had an office in Wise County, Virginia from 1978 to the middle of 1981, but had moved its office to Lee County, Virginia before October, 1981. A post office box was maintained by the Debtor in Lee County, although a post office box in Wise County (in the name of the president's father, who resided there) may have been used from time to time. All mining operations of the Debtor were located in Lee County and Harlan County, Kentucky; there were no open mines in Wise County or any other location in Virginia. Debtor's registered agent, an attorney's law office, was located in the City of Bristol, Virginia. A business checking account was maintained at First State Bank in Wise County and Powell Valley National Bank in Lee County. Although the Debtor leased equipment to operators in Wise and Lee counties, all coal mining operations took place in Lee County or in Kentucky.

Testimony of another witness, the comptroller for the Debtor, was introduced at trial. The comptroller testified that he had been employed in May, 1981, that he had total familiarity with Debtor's records and business, and worked for Yale Mining until 1983. He had no knowledge of any operations outside Lee and Harlan counties. He further testified that no business was conducted in Wise County in October, 1981; rather, all business transactions occurred in Lee County, Virginia or Harlan County, Kentucky.

The bank employee who handled the loan transaction in October, 1981 testified that First State Bank had repossessed the 1975 dozer and had stored it in Wise County.

He further stated that he was aware that the Debtor was working in Lee County, but didn't know where the dozer was to be used. Both the security agreement and financing statement signed by the Debtor contained an address for the Debtor of Box 630, Pennington Gap, which is in Lee County, Virginia. The bank officer further stated that the bank usually filed financing statements with the State Corporation Commission and in the county where equipment was located at the time the loans were made.

The Uniform Commercial Code does not define "place of business". Courts have held that the determination of what constitutes a place of business is a question of fact which does not involve a conclusion based on the application of a legal standard but, instead, requires a finding in each case based on a "non-technical statutory standard closely related to practical human experience." *In re McCrary's Farm Supply, Inc.*, 705 F.2d 330, 35 UCC Rep. 1667, 1670 (8th Cir.1983).

Several tests have been used in making the factual finding of what constitutes a place of business. One such test measures the quantity of work accomplished at a particular place; another focuses on "notoriety"; that is, the extent to which creditors and others know that the debtor does business at the location in question. A third test considers whether the debtor actually conducts manufacturing and commercial activities in a particular place. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 33 UCC Rep. 1778 (6th Cir.1982); J. White and R. Summers, Uniform Commercial Code § 23–14 (2d ed. 1980). In the case of *In re P.S. Products Corp.*, 7 UCC Rep. 411 (E.D.N.Y.1970), aff'd. 435 F.2d 781, 8 UCC Rep. 389 (2nd Cir.1970), the Bankruptcy Court applied the following general definition to determine whether the debtor had a place of business:

"... [A place of business] ... an agency, an office, a place actually occupied, whether continually or at regular periods by a person or his clerks, or those in his employment; a place devoted by the pro-

prietor to the carrying on of some form of trade or commence; a place where people generally congregate for the purpose of carrying on some sort of traffic, or where people are invited or expected to come to engage in some sort of mercantile transaction; a place where a calling for the purpose of gain or profit is conducted; a place where business is carried on by persons under their control and on their own account; some particular locality, appropriated exclusively to a local business, such as a farm, store, shop, or dwelling place; that specific place within a city or town at which a person transacts business. An occasional use or occupation of a place for business purposes is not sufficient to constitute it as a place of business."

 The Court does not believe it necessary to choose between the various tests adopted by text writers or other courts. As a factual determination in the instant case, the Court finds and concludes that the Debtor's only place of business in the State of Virginia in October, 1981 was in Lee County.[1] The office and all Virginia mining operations were located in Lee County. The security agreement and financing statements both list the Debtor's address as Pennington Gap, Virginia, which is located in Lee County. The location of a corporation's registered agent is not a place of business under the *Code of Virginia. In re Dunn Brothers, Inc., supra*, at 46, 32 UCC Rep. at 1200; *Goldberg Co., Inc. v. County Green Ltd. Partnership*, 438 F.Supp. 693, 23 UCC Rep. 168 (W.D.Va. 1977). Further, mere use of a post office box is insufficient to constitute a place of business. *In re P.S. Products, supra*, at 7 UCC Rep. 422.

The local filing provisions of *Va. Code* § 8.9–401(1)(c) require that VNB file a financing statement in Lee County, Virginia, the Debtor's only place of business in the state.

---

1. *In re Hurt Enterprises, Inc., supra,* contains similar factual circumstances relating to change of business location as herein.

For the reasons stated above, the Court finds and concludes that VNB failed to perfect its security interest in the 1975 International TD Dozer due to its non-compliance with filing requirements set forth in the Code of Virginia. VNB's unperfected security interest is, therefore, subordinate to the rights of the Trustee in the collateral. The bank's claim as to the dozer is allowed as a general unsecured claim.

A determination of the validity or extent of other alleged liens held by VNB shall be made pursuant to *Rule* 7001, *et seq.* The Motion for Relief as to the Dozer is hereby DENIED, and Motion # 3 is dismissed unless counsel requests further hearings within ten (10) days.

It is SO ORDERED.